**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| **DANNY RASHON WILMORE** ) | |
|     **ID# 1058419** ) | |
|         **Petitioner,** ) | |
| **vs.** ) | **No. 3:09-CV-0803-B (BH)** |
| ) | |
| **RICK THALER, Director,** ) | **Referred to U.S. Magistrate Judge** |
| **Texas Department of Criminal** ) | |
| **Justice, Correctional Institutions Division,** ) | |
|         **Respondent.** ) | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the provisions of 28 U.S.C. § 636(b) and an Order of the Court, this case has been referred for findings, conclusions, and recommendation.

## I.  BACKGROUND

On April 28, 2009, petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. §§ 2254 challenging his conviction for aggravated robbery in cause F00-55264-NV.  Respondent is Rick Thaler, Director of TDCJ-CID.

### A.  Factual History

On November 28, 2000, the State indicted petitioner for the aggravated robbery of Sekitha Spencer on or about October 26, 2000.  (Trial Transcript:2).  Petitioner pled not guilty and was tried with his co-defendant, Leonard Taylor, before a jury on August 21-23, 2001.

The State presented evidence at trial that at around 8:00 a.m. on October 26, 2000, two men carrying handguns kicked in the front door of Sekitha Spencer's residence, where she lived with her sister and her sister's twin infant daughters.  (R. 5:4-5, 44-7, 102).  The men locked the women and babies in a closet and ransacked the house, taking a VCR, a laptop computer, and a camcorder.  The two men were wearing black jackets with hoods.  (R. 5:9-12, 21, 29, 48-50, 66).  Neither of the

women were able to identify the men who robbed them from photographic line-ups. (R. 5:37, 68-9). The police were able to obtain fingerprints from a clothes iron box and an electronic game box that the robbers had taken out of a closet.  (R. 5:117, 125).  Spencer testified that the boxes had been stored in her closet since the previous Christmas, and that the game box held Christmas ornaments. (R. 5:59, 70).

Two days later, the Dallas Police Department received an anonymous tip about the location of the two men and the stolen property.  Petitioner and Leonard Taylor were subsequently arrested at Latecia Jeans' apartment in Dallas.  The stolen VCR was hooked up to the television, the laptop computer was on a coffee table, and the camcorder was in a children's toy box.  A black jacket later identified by Spencer as having been worn by one of the robbers was on the floor in one of the bedrooms in the apartment.  Petitioner's fingerprints matched the ones lifted from the two boxes at the crime scene. (R. 5:50, 181-91, 237).

Jeans is the mother of petitioner's children.  She testified at trial that on the evening of October 25, 2000, she was in her bedroom when she heard petitioner, Taylor, and  two other men plotting a robbery.  Petitioner did not know that she heard the conversation.  The men left the next morning at around 6:00 a.m.  (R. 5:132-38, 172). When Jeans saw petitioner later that day, he asked her for $100 to buy the laptop, camcorder, and VCR from another man that he was with.  Jeans gave him the $100, but she knew that petitioner had stolen the items himself.  (R. 5:139).  Later that night, after accessing the laptop, Jeans realized that the laptop belonged to Sekitha Spencer, whom she had met before.  She confronted petitioner, and he admitted to her that he had committed the robbery. (R. 5:139, 172).

Petitioner testified at trial.  He denied committing the robbery and maintained that Jeans lied about hearing him plan a robbery because she was upset that he was dating another woman.

2

Petitioner claimed that he was babysitting his children at the time of the robbery while Jeans looked for a job, and that he went to a funeral later that day with his family. Late that evening, he bought the items from two other men with the $100 he got from Jeans. Petitioner also explained that his fingerprints were on the game box because he had used it to transport a pound of marijuana that he sold to Spencer's boyfriend at her house three or four weeks before the robbery. Petitioner did not explain why his fingerprints were on the clothes iron box. (R. 6:39-54).

Petitioner's mother testified that she picked petitioner up from Jeans' apartment at 10:15 or 10:20 A.M. on October 26, 2000, to attend her mother-in-law's funeral, and that he stayed at her house after the funeral until 11:00 or 12:00 that night. She also testified that petitioner was watching television and babysitting the children, and that Jeans was not at the apartment when she arrived. The mother acknowledged that she did not know where petitioner was at 8:00 a.m. on October 26, 2000. (R. 6:17-22).

Cara Brown testified that she had dated petitioner, and that Jeans had exhibited hostility and made threats towards her. Brown further testified that about two weeks before October 26th, she drove petitioner to a friend's house, and that she now realized it was Spencer's house. She stayed outside while petitioner entered the house with a game box, and he stayed inside for five minutes before returning to the car. (R. 6:24-9).

Defense investigator Rex Reynolds testified that he interviewed Jeans prior to trial, and that she said that petitioner had told her that he bought the stolen items. She never told Reynolds that she heard a discussion about committing a robbery, and she never told him that petitioner admitted that he committed the robbery. (R. 6:10-13).

Elgin Walker testified on rebuttal for the State that he used to date Spencer, that he would visit her house, and that he used to sell cocaine, but he never sold out of her house. Walker further

testified that he knew petitioner by his street name "Up," that petitioner had not visited him at Spencer's house, that petitioner never brought him marijuana there, and that he had never purchased a pound of marijuana from anyone.  Walker also testified that he was in jail on October 26, 2000. Finally, Walker testified that he bought Spencer's son a video game for Christmas of 1999, and he identified the box from the Spencer's closet as the box containing the game when he bought it.  (R. 6:125-31).

The jury found both defendants guilty, and after a sentencing hearing, sentenced petitioner to forty years' imprisonment and Taylor to thirty years' imprisonment. (R. 7:2, 79).

**B.   Procedural History**

On direct appeal, petitioner alleged that the State violated a motion in limine, and that the trial court erred in denying his motion for a continuance to secure the presence of an absent witness. Petitioner's conviction was affirmed on direct appeal.  A petition for discretionary review (PDR) was filed, but it was dismissed as untimely.  *Wilmore v. State*, No. 05-01-01399-CR (Tex. App. – Dallas, Oct. 23, 2002, pet. dismissed).

Petitioner filed a state habeas application on October 6, 2006, alleging that he had been denied his right to file a timely PDR.  The Texas Court of Criminal Appeals granted relief on April 18, 2007, and permitted petitioner to file an out-of-time PDR. *See Ex parte Wilmore*, No. AP-75,656 (Tex. Crim. App. April 18, 2007).[1]  Petitioner filed a PDR raising the same issues raised on appeal, and it was refused by the Court of Criminal Appeals on October 10, 2007. *Wilmore v. State*, PDR No. 1183-07.  Petitioner did not file a petition for writ of certiorari.  Petitioner then filed a second

---

[1]   Because the Court of Criminal Appeals granted petitioner the right to file an out-of-time PDR, the date when petitioner's conviction became final was reset, and petitioner's federal habeas petition is therefore a timely filed petition. *Jimenez v. Quarterman*, 129 S.Ct. 681, 686-87 (2009).

state habeas application on October 6, 2008, alleging the same first four grounds as in his federal petition. (S.H.Tr.:7-19).[2] The trial court made findings recommending that relief be denied. (S.H.Tr.:73-76). On January 28, 2009, the Court of Criminal Appeals denied relief without written order based on the findings of the trial court without a hearing. (S.H.Tr.:cover).

On April 28, 2009, petitioner mailed his petition for federal habeas relief, along with a memorandum in support. (*See* Pet. Writ of Habeas Corpus (Pet.) at 7).[3] Respondent filed a response on October 6, 2009, and provided the state court records. No reply brief was filed.

## C. Substantive Issues

Petitioner claims that: 1) his trial counsel was ineffective for failing to investigate the case, failing to secure the presence of alibi witnesses, and failing to move for a continuance in order to secure an alibi witness; 2) the State violated *Batson v. Kentucky* when it used peremptory strikes to strike two African-American veniremembers; 3) he is actually innocent of the crime; 4) the judgment is void because the trial court lacked jurisdiction to hear the case; 5) the trial court violated a motion in limine and his Fifth Amendment rights by permitting testimony regarding a statement petitioner made to the police; and 6) the trial court abused its discretion in denying a defense motion for continuance.

Respondent does not contend that petitioner failed to exhaust any of his claims at the state level.

## II. APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.

---

[2] "S.H.Tr." refers to the record from the state habeas proceeding, cause #WR-67,169-02, dated January 9, 2009.

[3] *See also Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999) (recognizing that prisoners file their federal pleadings when they place them in the prison mail system).

L. 104-132, 110 Stat. 1217, on April 24, 1996.  Title I of the Act applies to all federal petitions for

habeas corpus filed on or after its effective date.  *Lindh v. Murphy*, 521 U.S. 320, 326 (1997).

Because petitioner filed the instant petition after its effective date, the Act applies to his petition.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions.

Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court pro-
> ceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unrea-
> > sonable application of, clearly established Federal law, as determined by the
> > Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determin-
> > ation of the facts in light of the evidence presented in the State court
> > proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term

of art that refers to whether a court's disposition of the case was substantive, as opposed to proced-

ural."  *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).  Here, the denial of petitioner's state

writ constitutes an adjudication on the merits of the claims fairly presented to the Texas Court of

Criminal Appeals in such writ.  The AEDPA standards enumerated in 28 U.S.C. § 2254(d) thus

apply to the claims raised in petitioner's federal petition.

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact.

*Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001).  A decision is contrary to clearly established fed-

eral law within the meaning of § 2254(d)(1), "if the state court arrives at a conclusion opposite to

that reached by [the Supreme Court] on a question of law or if the state court decides a case

differently than [the] Court has on a set of materially indistinguishable facts."  *Williams v. Taylor*,

529 U.S. 362, 412-13 (2000).

With respect to the "unreasonable application" standard, *Williams* instructs that a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise under *Williams*, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## III. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

In his first ground for relief, petitioner asserts that his trial counsel was ineffective for failing to investigate the case, failing to secure the presence of alibi witnesses, and failing to move for a continuance in order to secure an alibi witness. Petitioner asserts that if his attorney had represented him effectively, he would not have been convicted of aggravated robbery.

To successfully state a claim of ineffective assistance of counsel under Supreme Court precedent, petitioner must demonstrate (1) that counsel's performance was deficient and (2) that the defi-

cient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). A failure to establish either prong of this test requires a finding that counsel's performance was constitutionally effective. *Id.* at 696. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

To determine whether counsel's performance is constitutionally deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. Further, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691.

To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. In the context of ineffective assistance of trial counsel, the prejudice component of the *Strickland* test "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (citations and internal quotation marks omitted). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent the alleged errors of counsel. *Strickland*, 466 U.S. at 695-96. Petitioners must "affirmatively prove prejudice." *Id.* at 693. They cannot satisfy the second prong of *Strickland* with mere speculation and conjecture. *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992). Conclusory allegations are also insufficient to obtain habeas relief. *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990).

At the state habeas level, petitioner's trial counsel submitted an affidavit stating that he met with petitioner four times before trial, spoke to his mother by telephone several times, and that

petitioner gave him and/or his investigator the names of three females he was allegedly with at the time of the robbery.  Counsel interviewed the first woman, Shirley Neal Noble, and she informed him that she was not with petitioner on that date and that petitioner was a "liar."  The second woman, Latecia Jeans, told the investigator that she was not with petitioner after 6:00 a.a. on the day of the robbery, and she later testified for the prosecution.  The third woman, Cara Brown, testified for petitioner.  (S.H.Tr.:77).  Counsel's affidavit also states that absent witness Damian Moore was going to be an alibi witness for petitioner's co-defendant, and his testimony would not have benefitted petitioner.  (S.H.Tr.:78).  Finally, counsel avers that he and his investigator attempted, but were unable, to find the men who allegedly sold petitioner the stolen items.  (S.H.Tr.:78).

The state habeas court found counsel to be trustworthy and his affidavit worthy of belief. (S.H.Tr.:74).  Based upon the record, petitioner's application, and counsel's affidavit, the state habeas court also found the statements in counsel's affidavit to be true and correct.  (S.H.Tr.:74-5). The state habeas court concluded that petitioner was not denied his right to effective assistance of counsel. (S.H.Tr.:75).  Based on these findings, his ineffective assistance claims were denied at the state level.  (S.H.Tr.:cover).   Petitioner has not shown that the state court's decision is an unreasonable application of the *Strickland* standard.

**A.**   **Failure to Investigate**

Petitioner first asserts that his attorney did not fully investigate his case because he did not meet enough times with him and his mother, did not interview Jeans' neighbors to determine whether anyone saw her or petitioner leaving from or returning to the apartment on the day of the robbery, failed to determine whether anyone saw petitioner purchase the stolen items, and failed to investigate whether other fingerprints were on the boxes.  Petitioner also complains that he was not provided a copy of his attorney's affidavit before the state court recommended denying relief.

9

Alleged infirmities cannot be a basis for federal habeas relief. *Hallmark v. Johnson*, 118 F.3d 1073, 1080 (5th Cir. 1997). Petitioner's complaints about the state habeas process are not a basis for federal habeas relief. Moreover, it is clear from petitioner's federal habeas petition that he has since read the affidavit provided by his attorney at the state level, and he does not respond to or refute his attorney's assertions that he investigated the case thoroughly by hiring an investigator, investigating each alleged alibi witness petitioner offered, and attempting to locate the men who allegedly sold petitioner the stolen items.

Petitioner has also failed to show that he was prejudiced by any alleged failure to investigate his case. He contends that there may have been witnesses who could have supported his version of events, but he provided no names and no evidence regarding the testimony to be provided by these hypothetical witnesses. Likewise, petitioner has not shown that further investigation into fingerprints discovered by the police at the scene of the crime would have revealed any evidence that would have benefitted him. When alleging that counsel was ineffective for failing to fully investigate a case, a habeas petitioner must allege with specificity what the investigation would have revealed and how this would have changed the outcome of the trial. *Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005). Petitioner has failed to allege how further investigation would have aided his attorney in representing him, and he has therefore failed to show that his attorney was ineffective in this regard. Petitioner has also not shown a reasonable probability that he would not have been convicted of this offense had additional investigation occurred, especially given that his fingerprints were found on two boxes at the scene of the robbery, and he provided no explanation whatsoever for how his fingerprints were found on one of them.

**B.**   **Failure to Secure Presence of Alibi Witnesses**

Petitioner next contends that counsel did not secure the presence of Damian Moore as an

alibi witness, failed to present testimony from persons who may have seen petitioner purchase the items, and failed to present testimony from witnesses who may have seen Jeans leave the apartment the morning of the robbery in order to support petitioner's claim that he was alone baby-sitting the children.

In order for a petitioner to establish prejudice under the *Strickland* standard for a failure to call witnesses, he must show not only that testimony from missing witnesses would have been favorable, but also that the witness would have testified at trial. *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985). Petitioner's attorney's affidavit explains that Moore would not have provided useful testimony for petitioner because he was intended to be an alibi witness for his co-defendant, who testified that he was with Moore the night before the robbery and the morning of the robbery. (R. 6:85-88). Petitioner never mentioned Moore, testifying that he was babysitting his children at the time of the robbery. (R. 6:42-3). Petitioner has therefore not shown this Court that Moore was willing to testify for him or that testimony would have been favorable to him.

As for any hypothetical witnesses who could have testified at trial, petitioner has failed to meet his burden of providing evidence that particular witnesses would have presented favorable testimony and would have been willing to testify at trial. In addition, the record from the trial reveals that counsel cross-examined the State's witnesses vigorously, (R. 4:16-20; R. 5:14-21, 74-84, 144-158, 202-07), and called two alibi witnesses, (R. 6:17-21, 24-29). The record supports the trial court's conclusion that petitioner was not denied his right to effective assistance of counsel on this basis.

C.     **Failure to Properly Move for Continuance**

Finally, petitioner asserts that his attorney was ineffective for failing to make a proper motion for continuance in order to secure the presence of Damian Moore as a witness.

During trial, defense counsel requested a continuance in order to secure the presence of Moore, who had been subpoenaed and sworn, but had not appeared to testify. This motion for a continuance was denied by the trial court. (R. 6:2-3). The state appellate court later ruled that his motion had not been made properly under state law. Petitioner has not shown prejudice because he failed to show that if a proper motion for continuance been made and granted, and Moore had testified, there is a reasonable probability that he would not have been convicted. He has presented no evidence regarding what Moore's testimony would have been. Based on the record, it appears that Moore's testimony would have provided an alibi for petitioner's co-defendant, not petitioner.

Petitioner's ineffective assistance claims are without merit and should be denied.

## IV. BATSON CLAIM

In his second ground for relief, petitioner asserts that his constitutional rights were violated when the State used peremptory challenges to remove two African-American jurors from the jury panel. In particular, petitioner asserts that the State removed Jurors 19 and 53 from the jury panel because of their race.

In *Strauder v. West Virginia*, 100 U.S. 303 (1880), the Supreme Court held that when a black defendant has been tried by a jury from which members of his own race have been purposely excluded, he has been denied equal protection of the law. In *Batson v. Kentucky*, 476 U.S. 79 (1986), the Court reaffirmed this holding and further held that the Equal Protection clause forbids a prosecutor from using his peremptory challenges to challenge potential jurors solely on account of their race. *Id.* at 88. The Court also held that, in order to establish a claim of purposeful racial discrimination in the jury selection process by the use of peremptory challenges by the prosecutor, a criminal defendant must make out a *prima facie* case of purposeful discrimination by first showing that he is a member of a racial group capable of being singled out for differential treatment, and that

12

the prosecutor has exercised peremptory challenges to remove from the jury panel members of his race. A defendant must then show that these facts and other circumstances raise an inference that the prosecutor used the practice to exclude veniremembers based on their race. Once this showing has been made, the burden then shifts to the State to provide a race-neutral explanation for challenging the jurors. *Id.* at 96. If the State presents a racially-neutral explanation for a strike, the trial court must decide whether the defendant has carried his burden of proving purposeful racial discrimination. *Id.* at 98; *Purkett v. Elem*, 514 U.S. 765, 767-68 (1995).

In making the decision as to whether the defendant has met his burden of proof, the truthfulness of the prosecutor's explanation must be determined by assessing the credibility and demeanor of the State's attorney. *Hernandez v. New York*, 500 U.S. 352, 365 (1991). This judgment is one which lies "peculiarly within a trial judge's province." *Id.* Implausible or fantastic justifications are usually pretexts for purposeful discrimination. *Purkett v. Elem*, 514 U.S. 765, 768 (1995) (per curiam). "[T]he trial court's decision on the ultimate question of discriminatory intent represents a finding of fact of the sort accorded great deference." *Hernandez*, 500 U.S. at 364; *accord*, *Batson*, 496 at 98 n.21 (holding that, when a finding of fact turns "on evaluation of credibility, a reviewing court ordinarily should give those findings great deference"). Under 28 U.S.C. § 2254(e)(1) the resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence.

During voir dire at petitioner's trial, defense counsel objected to the State using peremptory challenges to remove these two African-American jurors. (R. 3:139). After noting that two members of the sitting jury were Hispanic, the prosecutor stated that he peremptorily struck Juror 19 for the same reason that he struck Juror 18 -- they were the last two remaining members of the jury panel

13

who stated that time spent in the penitentiary was for rehabilitation purposes. (R. 3:139-40). He further stated that he struck Juror 53, along with Juror 17, because they both served on previous juries that returned not guilty verdicts. (R. 3:140). The trial court found that these were reasonable race-neutral reasons for striking Jurors 19 and 53 and overruled the defense's objection. (R. 3:142). Petitioner has presented no controverting evidence.

In *Miller-El v. Dretke*, 545 U.S. 231, 125 S.Ct. 2317, 2340 (2005), the Supreme Court held that the state court findings that the reasons articulated for several peremptory strikes were race-neutral and non-pretextual had been shown to be incorrect by clear and convincing evidence. The Court based its decision on the fact that Miller-El had presented evidence that: 1) ten of eleven African-American veniremembers had been peremptorily struck by the State, leaving one African-American on the jury; 2) the reasons given for peremptorily striking the African-Americans, such as certain answers to questions, applied equally to similar persons who were not African-American but were permitted to serve on the panel; 3) the State shuffled the jury two different times when a large number of African-Americans was at the front of the venire panel; 4) the State posed contrasting questions, using graphic descriptions of the death penalty to African-Americans and bland language to others; and 5) the Dallas County District Attorney's office had for decades preceding Miller-El's trial followed a policy of systematically excluding African-Americans from juries. *Id*. at 2325-30, 2332-39.

Here, petitioner was convicted in Dallas County, Texas, and there were, according to statements made by the prosecutor in response to the *Batson* objection, two Hispanics who sat on petitioner's jury, but no African Americans. Unlike *Batson*, however, similar jury veniremembers who were not African-American were struck for the same reasons as the two African-American veniremembers. The state habeas court denied this claim on its merits. (S.H.Tr.:cover, 75-6).

Petitioner has failed to establish that the state habeas court's decision denying this ground for relief is contrary to the holding in *Batson*, and this claim should be denied.

## V.  ACTUAL INNOCENCE

In his third ground for relief, petitioner asserts that his constitutional rights were violated because he is actually innocent of aggravated robbery.  In particular, petitioner asserts that alibi evidence exists which proves that he is not guilty, and that the evidence presented at trial in support of his conviction is unreliable.

In *Herrera v. Collins*, 506 U.S. 390, 400 (1993), the Supreme Court held that a claim of actual innocence based on newly-discovered evidence does not and has never been held to be a basis for federal habeas relief absent an independent constitutional violation occurring in the state proceeding.  The Court then assumed for the sake of argument that in a capital case, a "truly persuasive" showing of actual innocence would render the execution of an individual unconstitutional and thus warrant federal habeas relief if no state avenue existed to entertain such a claim.  The threshold showing for such an "assumed right" would be "extraordinarily high", however. *Id.* at 417.  The Court then concluded that conflicting affidavits submitted eight years after a trial, when considered in light of the strong evidence presented at trial supporting guilt, did not meet this threshold. *Id.* at 417-18.  Since *Herrera* was handed down by the Supreme Court, the Fifth Circuit has specifically rejected the argument that a showing of actual innocence would warrant habeas relief if there were no state avenue open to process such a claim. *Dowthitt v. Johnson*, 230 F.3d 733, 741 (5th Cir. 2000), *cert. denied*, 532 U.S. 915 (2001).  Accordingly, under both Supreme Court and Fifth Circuit case law, petitioner is not entitled to federal habeas relief based on a claim of actual innocence.

Moreover, Texas does have an avenue in which to pursue actual innocence claims.  In *State*

*ex. rel. Holmes v. Third Court of Appeals*, 885 S.W.2d 389, 398-99 (Tex. Crim. App. 1994), the Texas Court of Criminal Appeals held that actual innocence could be a basis for state habeas relief where a petitioner established as a threshold that newly discovered evidence, if true, created a doubt as to the efficacy of the verdict sufficient to undermine confidence in the verdict. Subsequently, in *Ex parte Elizondo*, 947 S.W.2d 202, 208-09 (Tex. Crim. App. 1996), the court held that in order for a petitioner to prevail on an actual innocence claim, he must show by clear and convincing evidence that no reasonable juror would have convicted him in light of the new evidence. Indeed, the state habeas court denied petitioner's actual innocence claim on its merits. (S.H.Tr.:75-6, cover).

Even if federal habeas relief were available on the basis of a stand-alone actual innocence claim, petitioner would not be entitled to relief. Petitioner's evidence of his actual innocence, such as his testimony that he was at Jeans' apartment at the time of the robbery and his mother's testimony that he was with her later in the day, was presented at trial. His arguments calling into question Jeans' veracity as a witness were also presented at trial. Petitioner has provided no evidence of actual innocence, and he is not entitled to relief on the basis of this claim.

## VI.  TRIAL COURT JURISDICTION

In his fourth ground for relief, petitioner asserts that his conviction is void because the trial court did not have jurisdiction in the case. In particular, petitioner asserts that because the offense report lists a different address for the robbery than what was alleged at trial, the indictment listed the incorrect address, and the trial court therefore did not have jurisdiction over the case.

The sufficiency of an indictment is a matter of state law, unless the indictment is so defective as to deprive the state court of jurisdiction. *McKay v. Collins*, 12 F.3d 66, 68 (5th Cir. 1994); *Johnson v. Puckett*, 930 F.2d 445, 447 (5th Cir. 1991). Federal courts, nevertheless, will not consider claims that a state indictment is insufficient to confer jurisdiction upon the trial court when

16

the issue "was squarely presented to the highest court of the state" and it can reasonably be inferred that that court passed on the merits of the sufficiency issue. *Alexander v. McCotter*, 775 F.2d 595, 598-99 (1985). Moreover, in a habeas proceeding, this Court does not sit in review of a state court's interpretation of its own law. *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998); *Weeks v. Scott*, 55 F.3d 1059, 1063 (5th Cir. 1995). This ground was raised at the state habeas level, and it was denied on its merits. (S.H.Tr.:75-6, cover). Therefore, this issue was squarely presented to the Texas Court of Criminal Appeals, and it was denied on its merits.

Moreover, the indictment charging petitioner with aggravated robbery does not list the incorrect address. At the top, it lists petitioner's name and address, where he was arrested. (Tr.:2; R. 5:184-88). The indictment further alleges that, on or about October 26, 2000, in Dallas County, Texas, petitioner robbed Sekitha Spencer while using a handgun; it does not list an address. (Tr.:2). The district court in which petitioner's case was tried has jurisdiction under state law to hear felony criminal cases that occur in Dallas County, Texas. *See* TEX. CODE CRIM. PROC. ANN. art. 4.05 (Vernon 1984). It therefore had jurisdiction to hear petitioner's case. This claim was denied on its merits at the state habeas level. (S.H.Tr.:cover). This denial is not contrary to federal law, and petitioner is entitled to no relief on the basis of this claim.

## VII.  MOTION IN LIMINE

In his fifth ground for relief, petitioner asserts that the trial court violated the motion in limine and his Fifth Amendment rights by permitting a former police officer to testify regarding a statement petitioner made after he was arrested. Respondent contends that this ground is both procedurally barred and without merit.

At trial, Marcus Sharp, a former Dallas police detective, testified that he arrested petitioner and Taylor on October 28, 2000, at Jeans' apartment, and he and other officers searched the

apartment and discovered the stolen items. (R. 5:181-90).  In response to a question from the prosecutor regarding whether either man had told him that the items had been purchased, Sharp responded that one of the men had made that statement to him after they arrived at the police station. (R. 5:194).  Defense counsel then objected that this answer violated a motion in limine, and this objection was sustained by the trial court. (R. 5:195).

On direct appeal, the state appellate court held that petitioner had failed to preserve the issue because the objection was untimely as it was made after the answer was given to the question, and the motion in limine itself did not preserve any alleged error.  *Wilmore v. State*, slip op. at 2.  The Supreme Court has held that when a claim was dismissed by a state court pursuant to an independent and adequate state procedural rule, federal habeas review of that claim is barred unless the prisoner can establish either cause for the default as well as actual prejudice as a result of the alleged violation of federal law *or* that failure to consider the claims would result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Harris v. Reed*, 489 U.S. 255, 262 (1989).  To satisfy the independent and adequate requirements, the dismissal of a claim must "clearly and expressly" indicate that it rests on state grounds which bar relief, *and* the bar must be strictly and regularly followed by state courts and applied to the majority of similar claims. *Finley v. Johnson*, 243 F.3d 215, 218 (5th Cir. 2001), *citing Amos v. Scott*, 61 F.3d 333, 338-39 (5th Cir. 1995).

The Fifth Circuit has held that the Texas contemporaneous objection rule constitutes an adequate and independent state ground that procedurally bars federal habeas review of a claim. *Jackson v. Johnson*, 194 F.3d 641, 652 (5th Cir. 1999).  The Court of Criminal Appeals has also ruled that an objection at trial is need to preserve even constitutional errors for appellate review. *See Allridge v. State*, 850 S.W.2d 471 (1991).  Accordingly, this claim was dismissed by the state

18

court pursuant to an independent and adequate state procedural rule, and petitioner was failed to either allege or show cause and prejudice for this default or a fundamental miscarriage of justice. Therefore, federal habeas review of this claim is barred.

Even assuming otherwise, and that Sharp's statement that one of the men told him that he had purchased the stolen items violated petitioner's constitutional rights, this is harmless error.  A petitioner is entitled to federal habeas relief due to constitutional trial error only if such error  had a substantial and injurious effect or influence on the verdict.  *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993).  Under *Brecht,*

> a constitutional trial error is not so harmful as to entitle a defendant to habeas relief unless there is more than a mere reasonable possibility that it contributed to the verdict.  It must have had a substantial effect or influence in determining the verdict. We recognize, however, that if our minds are "in virtual equipoise as to the harmlessness," under the *Brecht* standard, of the error, then we must conclude that it was harmful.

*Mayabb v. Johnson*, 168 F.3d 863, 868 (5th Cir. 1999) (quoting *Woods v. Johnson*, 75 F.3d 1017, 1026-27 (5th Cir. 1996)).  To be entitled to federal habeas relief due to a trial error, petitioner must show the error actually prejudiced him.  *Brecht*, 507 U.S. at 637.  Petitioner has not made this showing.  Petitioner testified at trial that he did not commit the robbery and that the stolen items were in his apartment because he purchased them from a third party. (R. 6:51-2).  Therefore, any alleged error in the detective testifying to a similar statement petitioner made to the police is harmless.  Petitioner is not entitled to relief on the basis of this claim.

## VIII.  MOTION FOR CONTINUANCE

In his final ground for relief, petitioner asserts that the trial court erred in denying the defense motion for continuance.  As noted earlier, counsel had argued during trial that the case should be continued in order to secure the presence of Damian Moore, who had been subpoenaed and sworn

but did not appear to testify.  This motion for a continuance was denied by the trial court. (R. 6:2-3).

On direct appeal, the appellate court held that the trial court had not abused its discretion in denying the motion because defense counsel had not, as required under state law, made a sworn showing of the witness's expected testimony.  The appellate court further held that petitioner had not preserved this issue for appeal because the issue had not been raised in his motion for new trial. *Wilmore v. State*, slip op. at 2-3.  The Court of Criminal Appeals then denied this claim in petitioner's PDR.  This denial is not contrary to federal law.

Even assuming that this claim is not procedurally barred because it was not raised in the motion for new trial, petitioner has shown no constitutional error.  The state appellate court found that the defense had not, as required under state law, made a proper motion for continuance.  In federal habeas proceedings the court does not sit in review of a state court's interpretation of its own law. *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998), *cert. denied*, 526 U.S. 1148 (1999); *Weeks v. Scott*, 55 F.3d 1059, 1063 (5th Cir. 1995).

Furthermore, a federal court is limited on habeas review to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  A petitioner is thus entitled to federal habeas relief due to trial error only if such error had a substantial and injurious effect or influence on the verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993).  As previously discussed, petitioner's co-defendant testified at trial that he was with Moore both the night before the robbery and at the time of the robbery.  (*See* R. 6:85-88). Moore would have provided the co-defendant with an alibi, whereas petitioner testified that he was at Jeans' apartment babysitting his children when the robbery occurred. (R. 6:42-3).  Petitioner has not shown how the trial court's denial of a motion to continue the trial to secure the presence of

Moore had a substantial and injurious effect or influence on the guilty verdict against him. Accordingly, he is entitled to no relief on the basis of this claim.

## VII. EVIDENTIARY HEARING

Upon review of the pleadings filed herein and the proceedings held in state court as reflected in the state-court records, an evidentiary hearing appears unnecessary.

## VIII. RECOMMENDATION

The Court should **DENY** with prejudice the request for habeas corpus relief brought pursuant to 28 U.S.C. § 2254.

**SIGNED on this 16th day of February, 2010.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE


## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE